JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, James Benson ("appellant"), appeals his conviction for murder. For the reasons set forth below, we affirm.
 {¶ 2} On May 12, 2005, the Cuyahoga County Grand Jury indicted appellant on one count of aggravated murder, in violation of R.C.2903.01(A), with a three-year firearm specification. Appellant pled not guilty to the indictment.
 {¶ 3} On September 2, 2005, appellant filed a motion to suppress any oral statements made by him. Additionally, on November 29, 2005, appellant filed an objection to the state's rule 404(B) notice.
 {¶ 4} The trial of this matter commenced on December 5, 2005. Prior to jury selection, the trial court held a hearing to address several motions filed by both the state and appellant. First, the court granted the state's motion for jury view, which requested for the jury to view the location where the crime occurred. Next, the trial court granted the state's motion to admit 404(B) evidence at the trial as it relates to past interactions between appellant and the victim. The court did not rule on the 404(B) motion as it relates to witnesses testifying to specific hearsay statements, and instead, would address those issues when the witnesses testify during the trial.
 {¶ 5} The court then proceeded to hear testimony and arguments regarding appellant's motion to suppress his oral statement given to police. During the hearing, the trial court heard the testimony of Chief Merlin Canter, Officer Gerald *Page 4 
Sowul, Officer Woodward and appellant.[1] Based upon the evidence presented during this hearing, the trial court denied appellant's motion to suppress.
 {¶ 6} The case then proceeded to opening statements. Subsequently, the state presented 33 individuals for examination. Their testimony revealed the following pertinent facts.
 {¶ 7} During the evening of April 29, 2005, Kimberly Benson ("the victim"), wife of appellant, called her niece, Patricia Harris, and asked to spend the night at her house. Harris consented and drove to the victim's home on Kenyon Drive in Maple Heights, Ohio, which she shared with appellant. Harris picked the victim up and the two returned to Harris's house for the evening. The victim was unable to drive herself to Harris's home because her vehicle was not functioning that evening.
 {¶ 8} The next day, Harris drove the victim to her home on Kenyon Drive. Harris witnessed the victim enter her home about 1:15 or 1:20 p.m.
 {¶ 9} The next time anyone heard from the victim was when her and appellant's daughter, Bethany Benson, telephoned the victim's cell phone while Bethany was at her friend's house. While no specific person answered the phone, the phone was nevertheless picked up. On the other end, Bethany heard her mother frightened and yelling, "Tony, get off of me." Bethany next heard her father respond "no" and "take me somewhere." Cell phone records indicate that this call lasted 82 *Page 5 
seconds and occurred approximately 3-4 minutes before the victim was shot.
 {¶ 10} After hearing the conversation between the victim and appellant, Bethany attempted to telephone her mother four or five times, but was unsuccessful. Additionally, she telephoned her sister Avielle in California and told her about the telephone call between her mother and appellant.
 {¶ 11} Avielle attempted to contact her mother numerous times but was unsuccessful. Additionally, she contacted appellant but was unsuccessful until the fifth or sixth time. On that call, appellant answered the call but was out of breath. Avielle asked him where her mother was and he responded that she was getting her car fixed and was probably with her boyfriend.
 {¶ 12} Richard Woods, Frank Hamilton, Nicole English, Trisha Bryson and Tenika Philpotts testified that they witnessed a female and male fighting in a gold Dodge Intrepid that was stopped on South Miles Road on April 30, 2005. The female had one foot out the door of the vehicle and was screaming "help me, somebody help me." A male was restraining her by the shoulders. Shortly after, a gun shot rang out and the witnesses saw an African-American male emerge from the passenger side of the vehicle wearing a white jump suit and carrying a gun in his hand. The male fled the scene, ran through a field and jumped over a fence. After witnessing the male flee, the witnesses approached and saw a woman slumped in the driver's seat of the car. She was bleeding in the back right side of her head.
 {¶ 13} Officer Richard Tusig, a Cleveland police officer, testified that on April 30, 2005, *Page 6 
he received a telephone call at 2:01 p.m. to respond to South Miles Road. He arrived at the location around 2:10 p.m. and saw a women slumped over inside a gold Dodge Intrepid with her feet hanging out the door. Shortly thereafter, an ambulance arrived.
 {¶ 14} The victim was transported to MetroHealth Medical Center. Upon arrival, she was not breathing, was unconscious, and unresponsive. Mark Malangoni, M.D., determined that the victim would not survive from the gun shot wound to her head. After Dr. Malangoni received permission from appellant via telephone to remove the victim from life support, she finally passed at 7:45 p.m. on April 30, 2005.
 {¶ 15} Tara Christian, appellant's neighbor and friend, testified that appellant arrived at her home to see her husband around 2:30 p.m. on the day of the murder.
 {¶ 16} Chief Merlin Canter testified that he received a phone call from Sergeant Joseph Ehrbar on April 30, 2005. Ehrbar told Canter that the victim had been shot and that the Cleveland police needed to speak with appellant regarding the shooting. Due to Canter's friendship with appellant, Ehrbar requested Canter's assistance in facilitating a meeting with appellant.
 {¶ 17} Canter agreed and telephoned appellant's cell phone. Appellant returned Canter's call and informed him that he wished to turn himself into police. Canter picked appellant up at Ellacot Parkway in Warrensville Heights per appellant's request. Appellant then voluntarily entered Canter's vehicle and sat in *Page 7 
the front passenger seat.
 {¶ 18} Before arriving at the Maple Heights Police Department, appellant requested that they stop at his house. Canter complied with the request in an effort to facilitate a peaceful surrender and arranged for all police to leave the house prior to their arrival. When they arrived at the house, appellant went to his safe in the basement, retrieved an envelope that contained money, and handed it to his step-father, who had arrived at the home shortly after Canter and appellant.
 {¶ 19} Thereafter, Canter and appellant returned to the vehicle and proceeded to the Southgate Mall parking lot, where appellant had a brief conversation with some friends.
 {¶ 20} At 7:00 p.m., Canter and appellant arrived at the Maple Heights Police Department. Appellant was immediately processed and booked. Additionally, Sergeant Ehrbar contacted Lieutenant Holmes of the Cleveland police and informed him of appellant's surrender. Lieutenant Holmes arranged for Officers Gerald Sowul and Robert Woodward to retrieve appellant from the Maple Heights police station and transport him to the jailhouse in downtown Cleveland.
 {¶ 21} Once Officers Sowul and Woodward arrived at the Maple Heights station, they secured appellant in their vehicle. Thereafter, appellant was not free to leave the custody of the officers.
 {¶ 22} The officers arrived at the jailhouse in Cleveland and parked their vehicle in the garage. When they were transporting appellant to the elevator, he *Page 8 
asked what he was under arrest for. Sowul responded "felonious assault." Sowul testified that Woodward then asked appellant "who was assaulted?" and appellant responded, "my wife." Woodward testified that he asked Sowul, not appellant, "who was assaulted?" and appellant voluntarily responded, "my wife."
 {¶ 23} After hearing appellant's statement, Sowul immediately stopped him and asked if he was aware of his rights, to which appellant responded that he was not. Therefore, Sowul informed appellant of hisMiranda rights. Appellant responded that he knew and laughed. He then stated that he was with his wife and they were in the car having an argument when she took out a gun. They struggled over the gun, the gun went off, and she shot herself in the head.
 {¶ 24} When the officers and appellant reached the police station, the officers booked him. During that process, appellant continually stated that "he messed up" and "it's over now." After booking, Officer Sowul informed Homicide Detectives Hasan and Beaman of appellant's statements. The detectives ordered Officer Sowul to prepare a report of the statements.
 {¶ 25} During the investigation of the murder, detectives discovered a number of items in the victim's vehicle. They found a box of .380 caliber ammunition underneath the passenger's seat, one .380 caliber metal casing on the floor board of the passenger seat, blood on the arm rest and side of the driver's seat. Additionally, underneath the driver's seat, detectives discovered a sandwich bag which contained *Page 9 
a couple grams of marijuana, crack cocaine, a crack pipe, aluminum foil and white paper. Detectives also collected gunshot residue on the dashboard of the front passenger seat, headrest of the driver's seat, arm rest, steering wheel, passenger seat and headliner of vehicle. Finally, detectives retrieved half of the victim's cell phone.
 {¶ 26} No gun shot residue was found on the victim's or appellant's hands. Detective Darryl Johnson explained that the longer the time between the firing of the weapon and the time of the test could contribute to the lack of residue on the hands, as can washing the hands or rubbing them.
 {¶ 27} Carey Martin, a forensic scientist with the Cuyahoga County Coroner's office, testified that he preformed DNA analysis on a blood stain found on the jean jacket appellant was wearing at the time of his arrest. The test was inconclusive. Additionally, he tested a stain discovered on a pair of appellant's docker pants. The blood was determined not to be the victim's. The blood found on the arm rest in the Dodge Intrepid was determined to be the victim's. Finally, blood found on a white Foseco jump suit retrieved from appellant's home was determined to be nonhuman blood.
 {¶ 28} Kenneth Allen works with appellant at Foseco. He testified that on the morning of April 30, 2005, appellant used Allen's cell phone to call the victim in an effort to disguise the fact that he was calling her because she was not answering his calls when she saw his number on her caller identification. The victim did not *Page 10 
answer the call from Allen's phone.
 {¶ 29} Allen further testified that he contacted appellant later that evening after he heard the victim was shot and died. During that conversation, appellant told Allen he was in jail and his wife was dead. Additionally, appellant said that he and his wife were going down the road and they got in an argument when she pulled out a gun. They pulled over and wrestled for the gun. Allen testified that appellant told him he got the gun from the victim and the gun went off. Appellant then admitted to exiting the car and running from the scene because he was frightened.
 {¶ 30} Allen finally testified that a few weeks later, appellant returned to work and asked Allen what he told police. Allen told him "what you told me" and appellant responded, "you're the only one that could put me in jail."
 {¶ 31} Henry Veverka, detective with the Cleveland Homicide Unit, testified he and his partner, James Metzler, conducted a search of appellant's home. During the search of the house, Veverka saw a safe that is typically used to keep weapons. Veverka was unable to open the safe, but shook it and determined that nothing was contained in the safe.
 {¶ 32} Veverka also discovered a military utility box which is normally used to store ammunition. In the box, Veverka discovered a number of loose live rifle slugs.
 {¶ 33} In the house, Veverka also found the victim's life insurance policy in plain view which appellant was a named beneficiary. Additionally, he found other ammunition in the bedroom. He also retrieved two of appellant's paper pullover *Page 11 
suits from Foseco in a chest of drawers in the basement.
 {¶ 34} Verena Schmucker testified that she had an affair with appellant. She further testified that during their affair, appellant asked Schmucker for her assistance in setting the victim up to be arrested. More specifically, appellant wanted Schmucker to call the police when the victim would leave a local tavern so that she would get a DUI. Additionally, appellant would plant some crack cocaine in her purse. Schmucker testified that she refused to help appellant in his plan. Schmucker ended her relationship with appellant in February of 2005.
 {¶ 35} At the conclusion of Schmucker's testimony, the state then rested its case. Thereafter, appellant moved for a mistrial, arguing that Verena Schmucker's "other acts" testimony was inadmissible pursuant to Evid.R. 404(B). The state argued that the testimony went to motive and lack of accident of the murder. Additionally, the plan to plant drugs on the victim was evidence of modus operandi. The trial court agreed with the state's argument and denied appellant's motion for mistrial.
 {¶ 36} Thereafter, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion.
 {¶ 37} Appellant then took the stand on his own behalf. Appellant testified that on April 30, 2005, he was scheduled to work at Foseco until 12:00 p.m., but left early after he received a page from his home alarm company. Appellant explained that the company told him a window was broken at his home. Therefore, appellant left *Page 12 
work at 9:00 a.m. to tend to his house.
 {¶ 38} Appellant did not go directly home. Instead, he attempted to pick up his daughter, Bethany, at her friend's house but there was no answer at the home. He, therefore, went home. He arrived home around 10:00 a.m.
 {¶ 39} Around 11:30 a.m. or 12:00 p.m., Patricia Harris dropped the victim off at their home. When the victim arrived, she had a backpack with her. She placed it on the table, went downstairs, retrieved a large amount from the safe, and came back upstairs.
 {¶ 40} Appellant and the victim then tended to her vehicle which was not functioning the prior evening. On this occasion, however, the vehicle immediately started. Appellant asked the victim about the money and she stated that she owed it to somebody. She then left in her car around 12:15 p.m. He claims he never saw his wife thereafter.
 {¶ 41} Shortly after the victim left, Mark Benson, the appellant's nephew, appeared. The two went to his parent's house to do some work in the yard. Then his nephew dropped appellant off at Skorchers, a sports bar. While at Skorchers, appellant had only one beer and was there for only 20 minutes. He then got a ride from an unknown patron at Skorchers to another tavern, Wings.
 {¶ 42} Appellant arrived at Wings about 1:00 p.m. At 2:00 p.m., his nephew picked him up and drove him to his house. When he approached his home, he saw police vehicles, and instead, had his nephew drop him off at his friend's house *Page 13 
nearby, the Christian's home. While there he discussed the problems he was having with the victim.
 {¶ 43} Thereafter, Chief Canter called and left a message on appellant's voice mail. Once he received that message, appellant phoned Canter and informed him he wished to turn himself into the police. He met Canter in the Ellacott apartment complex in Warrensville Heights.
 {¶ 44} First Canter drove him to his house so that he could retrieve money and give it to his step-father. Canter then took him to the Southgate mall parking lot to meet some friends. Canter finally transported appellant to the Maple Heights Police Department shortly before 7:00 p.m.
 {¶ 45} When appellant arrived at the police station, he was booked. Appellant denied ever speaking with Kenneth Allen while at the Maple Heights police station.
 {¶ 46} Cleveland police officers then picked appellant up from the Maple Heights police department. Appellant testified that he responded to Officer Woodward's question of "who was assaulted?" by stating, "they said I shot my wife." Appellant denied that he responded, "my wife." Additionally, appellant maintains that Officer Sowul never informed appellant of his Miranda rights, nor did appellant tell the officers that his wife pulled a gun, that he and his wife struggled over that gun, or that the gun went off and she shot herself.
 {¶ 47} Appellant admitted to having an affair with Schmucker, but denied ever asking her to assist him in framing his wife for a DUI or drug possession. *Page 14 
 {¶ 48} Appellant also conceded that he left disturbing messages on his wife's voice mail the night before her murder. In those messages, he admits he called his wife such names as a whore and lesbian.
 {¶ 49} Appellant denied asking Sharray McGee to falsely testify during trial that she ran into him at Wings around 1:30 p.m. on the day of the murder.
 {¶ 50} Finally, appellant does not know who killed his wife, denies shooting her, and denies being with his wife at 2:00 p.m. on April 30, 2005.
 {¶ 51} After testifying, appellant rested his case and made another motion for mistrial, this time contesting the state's ability to cross-examine appellant about Sharray McGee. The court denied appellant's motion for mistrial. Additionally, appellant made another Crim.R. 29 motion for acquittal. The trial court denied this motion as well.
 {¶ 52} The state then requested the ability to present the testimony of Sharray McGee as a rebuttal witness. The trial court heard arguments by both the state and appellant regarding this matter. Additionally, the trial court conducted a voir dire of the witness. Considering the parties' arguments and voir dire, the trial court allowed Sharray McGee to testify as a rebuttal witness.
 {¶ 53} Sharray McGee testified that one week before the trial, appellant asked her to falsely testify at trial that, on the day of the murder, she ran into him at the Wings tavern around 1:30 p.m. and he bought her a drink. He also wanted her to testify that he then left Wings around 1:50 p.m. and she left 20 minutes later. *Page 15 
McGee declined appellant's request, and instead, informed the authorities of his proposition.
 {¶ 54} Following Ms. McGee's testimony, appellant moved again for a mistrial. The trial court denied appellant's request. Finally, the state and appellant presented their closing arguments.
 {¶ 55} Thereafter, the court provided the jury with the instruction that, included in count one, was a charge of the lesser included offense of murder. The court further provided the jury with a number of other instructions and then relinquished the case to the jury for deliberations.
 {¶ 56} On December 16, 2005, the jury found appellant not guilty of aggravated murder, but guilty of the lesser included offense of murder and the three-year firearm specification. The court proceeded immediately to sentencing and sentenced appellant to 15 years to life on count one and three years on the firearm specification, to run prior to and consecutive with the underlying conviction for murder, for a total of 18 years in prison.
 {¶ 57} Appellant now appeals and submits ten assignments of error for our review. Appellant's first assignment of error states:
 {¶ 58} "The trial court denied the defendant-appellant Due Process of Law under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it failed to suppress the alleged statements he made while in custody at the Maple Heights Jail *Page 16 
and at CPU."
 {¶ 59} Within this assignment of error, appellant argues that the trial court erred in failing to suppress his response of "my wife" to Officer Woodward's question, "who did he assault?" In asserting this proposition, appellant maintains that he was not properly advised of his rights under Miranda prior to the question. For the following reasons, we find appellant's argument meritless.
 {¶ 60} With regard to procedure, we note that this court set forth the standard of review for a trial court's denial of a motion to suppress inState v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, which states:
 {¶ 61} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973),34 Ohio St.2d 250, 63 Ohio Op.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906."
 {¶ 62} In Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694, the United States Supreme Court set forth the guidelines for the admissibility into evidence of any statement given during the custodial interrogation of a suspect. *Page 17 
 Miranda requires that a suspect "be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that, if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." Id. at 479.
 {¶ 63} Appellant claims that at no time during his detention at the Maple Heights police station or before he was booked at the Cleveland police station was appellant informed of his constitutional rights underMiranda. Consequently, appellant argues, any statements he allegedly made to Officers Sowul and Woodward while he was in transport to the Cleveland police station are inadmissible.
 {¶ 64} In State v. Jeffries (Aug. 24, 2000) Cuyahoga App. No. 76905, we stated that:
 {¶ 65} "The prosecution bears the burden of proving by a preponderance of the evidence that the accused was advised of his fourMiranda rights. State v. Gumm (1995), 73 Ohio St.3d 413, 429,653 N.E.2d 253. However, the Supreme Court of the United States has stated thatMiranda does not require a `talismanic incantation' of the specific warnings. California v. Prysock (1981) 453 U.S. 355, 359,101 S.Ct. 2806, 69 L.Ed.2d 696."
 {¶ 66} In the instant matter, Officer Sowul testified that, while in the garage of the Cleveland jailhouse, appellant asked what he was under arrest for, to which *Page 18 
Officer Sowul responded, "felonious assault." Officer Sowul then testified that Officer Woodward then questioned appellant "who he assaulted?" and appellant responded, "my wife."
 {¶ 67} Officer Sowul immediately stopped appellant from speaking any further and asked whether he was aware of his rights. Appellant indicated that he was not. Therefore, Officer Sowul informed appellant of his rights under Miranda. Thereafter, appellant stated that he was with his wife and they were in the car having an argument when she took out a gun. The two struggled over the gun, at which point the gun went off, and she shot herself in the head. Thereafter the officers and appellant reached the police station, the officers booked appellant.
 {¶ 68} During his testimony, Officer Woodward confirmed the testimony provided by Officer Sowul. Officer Woodward, however, testified that he did not question appellant about who he assaulted. Instead, he asked Officer Sowul "who was assaulted?," to which appellant responded, "my wife."
 {¶ 69} Appellant testified that he was never informed of hisMiranda rights until he was booked at the Cleveland jailhouse. Additionally, appellant testified that when Officer Woodward asked appellant "who was assaulted?," appellant responded, "I am accused of shooting my wife" and not "my wife."
 {¶ 70} Reviewing this evidence in a light most favorable to the state, we find appellant's statements that he struggled with his wife over the gun and she shot herself admissible. The evidence establishes that Officer Sowul read appellant his *Page 19 
rights pursuant to Miranda before appellant volunteered this information to the police. Accordingly, we find the trial court correctly denied appellant's motion to suppress in regard to this statement.
 {¶ 71} Additionally, we find appellant's response of "my wife" admissible as well. The United States Supreme Court has held that: "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976), 49 Ohio St.2d 31, 40-41,358 N.E.2d 105, vacated on other grounds in (1978), 438 U.S. 911,98 S.Ct. 3135, 57 L.Ed.2d 1154.
 {¶ 72} In the case sub judice, there is no evidence indicating the police were interrogating appellant when he made the statement, "my wife." Appellant volunteered the statement after Officer Woodward's first, and only, inquiry into the subject. Given the lack of interrogation, appellant's argument that his statement was inadmissible is without merit.
 {¶ 73} Furthermore, assuming arguendo that appellant's response of "my wife" was improperly admitted, such an error would have been harmless. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." To find an error harmless, an appellate court must be able to declare a belief that the error was harmless beyond a reasonable *Page 20 
doubt. State v. Lytle (1976), 48 Ohio St.2d 391, 403, 358 N.E.2d 623, vacated on other grounds in (1978), 438 U.S. 910, 98 S.Ct. 3135,57 L.Ed.2d 1154. An appellate court may overlook an error where the other admissible evidence, standing alone, constitutes "overwhelming" proof of guilt. State v. Williams (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph six of the syllabus. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v.Brown, 65 Ohio St.3d 483, 485, 1992-Ohio-61, 605 N.E.2d 46.
 {¶ 74} Here, there was overwhelming proof of appellant's guilt despite the alleged inadmissible statement. Appellant's response of "my wife" was no more incriminating than the statements made after he was informed of his Miranda rights. In other words, even without appellant's statement of "my wife," the remaining evidence (including appellant's statements that he was in a fight with his wife, struggled over the gun, and she shot herself), standing alone, constitute overwhelming proof of appellant's guilt. Accordingly, assuming arguendo that the trial court erred in allowing appellant's response of "my wife," such an error would nevertheless be harmless error. Appellant's first assignment of error is overruled.
 {¶ 75} Appellant's second assignment of error states:
 {¶ 76} "The defendant-appellant was denied effective assistance of counsel and Due Process Of Law under the Fifth, Sixth, Eighth andFourteenth Amendments of the United States Constitution for not having raised on his behalf a challenge to *Page 21 
his unlawful arrest on April 30, 2005."
 {¶ 77} In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. Strickland v.Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra, at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, at paragraph two of the syllabus; see, also, Strickland, supra, at 687.
 {¶ 78} A defendant has the burden of proving ineffective assistance of counsel and there is a strong presumption that a properly licensed trial counsel rendered adequate assistance. State v. Smith (1985),17 Ohio St.3d 98, 100, 477 N.E.2d 1128. As the Strickland Court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689; see, also,State v. Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. *Page 22 
 {¶ 79} In the instant matter, appellant argues that defense counsel was ineffective because he failed to challenge appellant's warrantless arrest and the evidence obtained therefrom. We find appellant's argument without merit.
 {¶ 80} The Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case.State v. Flors (1987), 38 Ohio App.3d 133, 528 N.E.2d 950, citingKimmelman v. Morrison (1986), 477 U.S. 365, 91 L.Ed.2d 305,106 S.Ct. 2574. The burden is on the defendant-appellant to point to evidence in the record supporting suppression of evidence. "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion."State v. Gibson (1980), 69 Ohio App.2d 91, 95, 430 N.E.2d 954. Moreover, counsel is not required to perform a futile act. State v. Martin (1983),20 Ohio App.3d 172, 174, 485 N.E.2d 717; State v. Lodge, Greene App. No. 2004 CA 43, 2005-Ohio-1908; State v. Davis, Butler App. No. CA2001-05-108, 2002-Ohio-865.
 {¶ 81} Here, appellant is unable to establish defense counsel's performance was ineffective because appellant has failed to establish that the warrantless arrest was contrary to law. The conditions under which a warrantless arrest may occur are set forth in R.C. 2935.04, which states:
 {¶ 82} "When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest *Page 23 
another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."
 {¶ 83} In the instant matter, it is clear that the officers had reasonable cause to believe appellant was guilty of the offense. The record supports the conclusion that appellant voluntarily surrendered himself to the Maple Heights police via Chief Canter. Thus, the Maple Heights police had reasonable grounds to detain appellant. Shortly thereafter, the Cleveland police briefly detained appellant long enough to transport him to the jailhouse downtown where they arrested appellant. As the foregoing facts establish that the officers performed a legal arrest pursuant to R.C. 2935.04, any challenge to the arrest and the evidence obtained therefrom would have been unavailing. Therefore, defense counsel was not ineffective for failing to file a futile motion to suppress. Appellant's second assignment of error is not well-taken.
 {¶ 84} Appellant's third assignment of error states:
 {¶ 85} "The defendant-appellant was denied Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court allowed into evidence opinion and hearsay testimony as to the nature of the relationship between the defendant-appellant and Kimberly Benson."
 {¶ 86} Here, appellant argues that, over counsel's objection, the trial court violated Evid.R. 404(B) by allowing the following witnesses to testify as to appellant's *Page 24 
and the victim's hostile relationship: Bethany Benson, Avielle Benson, Cindy Golden, Patricia Harris, Jeanne Scaccianoce and Verena Schmucker.
 {¶ 87} Evidence Rule 404(B) states:
 {¶ 88} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 89} R.C. § 2945.59 states:
 {¶ 90} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 91} Because Evid.R. 404(B) and R.C. § 2945.59, codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. State v.Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus.
 {¶ 92} In State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044,781 N.E.2d 88, *Page 25 
the Ohio Supreme Court held the admission of evidence is addressed to the broad discretion of the trial court, and a reviewing court shall not disturb evidentiary decisions in the absence of abuse of discretion resulting in material prejudice. The Supreme Court has repeatedly held the term abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., State v.Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 93} The trial court allowed several witnesses to testify as to the tumultuous marriage of appellant and the victim. This testimony provided the jury with appellant's feelings towards the victim leading up to her murder. Such evidence was offered to establish appellant's motive or intent in killing the victim and was not offered to prove appellant's character and that he acted in conformity therewith. Additionally, such evidence was presented to rebut appellant's statements to Officer Sowul and Woodward and Kenneth Allen that the shooting was only an accident. Furthermore, we cannot say that the unfair prejudice of the evidence substantially outweighed it probative value. Therefore, the trial court did not abuse its discretion in allowing testimony regarding the marriage of appellant and the victim. Appellant's third assignment of error is overruled.
 {¶ 94} Appellant's fourth assignment of error states:
 {¶ 95} "The trial court denied the defendant-appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court *Page 26 
denied the Motions for Acquittal."
 {¶ 96} Within this assignment of error, appellant maintains that the trial court erred in not granting appellant's motion for acquittal because none of the witnesses identified appellant as the person who shot the victim, nor did the state present any forensic evidence linking appellant to the shooting. We disagree and find that sufficient evidence existed establishing appellant as the perpetrator of the crime.
 {¶ 97} Motions for judgments of acquittal are governed by Crim.R. 29(A) which states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 98} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The motion "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394. *Page 27 
 {¶ 99} Viewing the evidence in a light most favorable to the state, we find that the state presented sufficient evidence that appellant was the one that committed murder in violation of R.C. 2903.02 by purposely causing the death of the victim. First and foremost, we note that appellant turned himself in to the police as testified by Chief Canter. Additionally, appellant's daughter, Bethany, testified that she telephoned the victim's cell phone and heard the victim yelling at appellant seconds before the murder. Detectives found half of the victim's cell phone in the vehicle after her death. Also, numerous witnesses at the scene testified that they witnessed an African-American male wearing a white jump suit flee the scene of the shooting with a gun in his hand. During the search of appellant's home, detectives discovered two white jump suits provided by Foseco. Moreover, Kenneth Allen testified that during the night of the murder, appellant told Allen that appellant and the victim were in a vehicle arguing and that after the shooting he was scared and ran away. Furthermore, Officers Sowul and Woodward testified that, after being informed of his Miranda rights, appellant stated that he and his wife were arguing, a struggle ensued, the victim had a gun, she shot herself in the head, and he ran from the scene. Finally, Sharray McGee testified that appellant attempted to illicit her to provide a false alibi for the time of the murder. The foregoing evidence sufficiently establishes that appellant was the perpetrator of the crime. Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 100} Appellant's fifth assignment of error states: *Page 28 
 {¶ 101} "The defendant-appellant was denied Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution by being convicted against the manifest weight of the evidence to sustain a conviction for the crime of murder."
 {¶ 102} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 103} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 104} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211,72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines *Page 29 
whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 105} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 106} Within this assignment of error, appellant argues that his conviction was against the manifest weight of the evidence because the state failed to present credible evidence that appellant was the perpetrator of the crime. Again, appellant argues that not one eyewitness could identify appellant as the shooter, no fingerprints or DNA matching appellant were retrieved from the scene, and appellant was at his neighbor's home within an hour of the shooting. We find appellant's argument without merit.
 {¶ 107} The state's numerous witnesses were cross-examined extensively regarding the lack of identification, fingerprints, gun shot residue and DNA evidence. Therefore, the jury was fully aware of the lack of this evidence. Nevertheless, the jury concluded that it did not negate the plethora of other evidence establishing appellant as the perpetrator of the crime, including that discussed in the previous assignment of error. The jury also apparently found the witnesses' explanations for the lack of physical evidence credible. Accordingly, after reviewing *Page 30 
the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot disagree with the jury's resolution finding appellant the perpetrator of the victim's murder. Therefore, appellant's fifth assignment of error is overruled.
 {¶ 108} Appellant's sixth assignment of error states:
 {¶ 109} "The trial court denied the defendant-appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it failed to instruct the jury on the lesser-included offense of reckless homicide."
 {¶ 110} Appellant alleges the trial court erred by failing to instruct the jury on the lesser included offense of "reckless homicide." Initially, we note that appellant failed to raise this issue before the trial court and has therefore waived all but plain error.
 {¶ 111} Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v. Moreland (1990),50 Ohio St.3d 58, 62, 552 N.E.2d 894; State v. Phillips,74 Ohio St.3d 72, 83, 1995-Ohio-171, *Page 31 656 N.E.2d 643.
 {¶ 112} Regarding the inclusion of jury instructions on a lesser included offense, this court has previously held that reckless homicide under R.C. 2903.041 is a lesser included offense of murder in violation of R.C. 2903.02. State v. Agosto, Cuyahoga App. No. 87283,2006-Ohio-5011, citing State v. Jones, Cuyahoga App. No. 80737, 2002-Ohio-6045. However, even though an offense may be statutorily defined as a lesser included offense of another, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. State v. Thomas (1988),40 Ohio St.3d 213, 216, 533 N.E.2d 286, certiorari denied (1989),493 U.S. 826, 110 S.Ct. 89, 107 L.Ed.2d 54; State v. Kidder (1987),32 Ohio St.3d 279, 513 N.E.2d 311.
 {¶ 113} In the instant matter, we do not find that the jury could have reasonably acquitted appellant of murder while finding him guilty of reckless homicide. The only evidence introduced at the trial indicating reckless behavior were appellant's own self-serving statements to Kenneth Allen and Officers Sowul and Woodward that appellant struggled with his wife, the gun went off, and the victim accidently shot herself in the head. "Even where the defendant offers some evidence through his own testimony supporting a lesser-included offense, he is still not entitled to an instruction on that offense if the totality of the evidence does not reasonably support an acquittal on the greater offense and a conviction on the lesser *Page 32 
offense." State v. Neely (2005), 161 Ohio App.3d 99, 110,2005-Ohio-2342, 249 N.E.2d 718, quoting State v. McCurdy, Hamilton App. No. C-020808, 2003-Ohio-5518.
 {¶ 114} The totality of the evidence does not reasonably support an acquittal on the greater offenses of aggravated murder and murder and a conviction on the lesser included offense of reckless homicide. Several witnesses testified that they saw the victim arguing with appellant before she was shot. She screamed for help and attempted to flee the vehicle. Appellant, however, physically restrained her from leaving. Also, Bethany Benson testified that she heard the victim plea with appellant to get off her and appellant denied her requests. Also notable is the fact the victim was shot in the back of the head contradicting any evidence of a struggle between the victim and appellant over the gun and an accidental shooting. Moreover, evidence was presented that appellant changed into a white jump suit before the shooting, brought a gun with him and planted drugs in the victim's vehicle. Finally, an instruction of reckless homicide would contradict appellant's own testimony that he did not shoot his wife, he was not at the scene of the incident, and that he never told the officers and Kenneth Allen that a struggle ensued and the gun accidentally went off. Accordingly, an instruction on reckless homicide was not warranted. Appellant's sixth assignment of error is without merit.
 {¶ 115} Appellant's seventh assignment of error states:
 {¶ 116} "The trial court denied the defendant-appellant Due Process of *Page 33 
Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it improperly instructed the jury on the definition of `purpose.'"
 {¶ 117} In his seventh assignment of error, appellant asserts that the trial judge improperly instructed the jury on "purpose" by adding to the definition additional means to provide for criminal culpability. The portion of the court's instruction to the jury that appellant complains of states as follows:
 {¶ 118} "If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be, but is not required to be, inferred from the use of the weapon. The inference, if made, is not conclusive."
 {¶ 119} Appellant argues that the instruction eliminates the possibility that the jury would find the act was done negligently or recklessly. First, we note that the instruction mirrors that found in 4 Ohio Jury Instructions (2006) 120, Section 503.01(E). Additionally, the instruction is nearly identical to that approved in State v.Stallings (2000), 89 Ohio St.3d 280, 291, 2000-Ohio-164, 731 N.E.2d 159. In that case, the jury instruction on the definition of "purpose" read:
 {¶ 120} "The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence. If a wound is inflicted upon a person with a deadly weapon in the manner calculated to destroy life or inflict great *Page 34 
bodily harm, the purpose to cause the death may be inferred from the use of the weapon. The inference is not conclusive and purpose is determined from the facts and circumstances in evidence."
 {¶ 121} Id. at 291.
 {¶ 122} The court found the instruction valid and stated:
 {¶ 123} "The foregoing instruction accurately reflects the law and is consistent with our prior decisions. The court said `inferred,' not `presumed,' and the word `may' is permissive, not mandatory. Further, the court specifically instructed that any such `inference is not conclusive.' Defendant's general objection to the instruction lacks merit."
 {¶ 124} Id. at 291-292, citations omitted.
 {¶ 125} The instruction in the instant matter is nearly identical to that used in Stallings, supra. As in Stallings, the instruction in this case said "inferred" and not "presumed," used the word "may," and instructed that any such "inference is not conclusive." Accordingly, we find the trial court properly instructed the jury on the definition of "purpose." Appellant's seventh assignment of error is overruled.
 {¶ 126} Appellant's eighth assignment of error states:
 {¶ 127} "The trial court denied the defendant-appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it allowed cross-examination *Page 35 
questioning regarding Sharray McGee and allowed her to testify as a rebuttal witness."
 {¶ 128} Within this assignment of error, appellant first argues that the trial court erred in allowing the state to cross-examine appellant regarding his alleged request of Sharray McGee to falsely testify that she was with him at the time of shooting. We disagree.
 {¶ 129} "The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163,407 N.E.2d 490 (citations omitted.) An examiner may ask a question during cross-examination if there is a good faith belief that a factual predicate for the question exists. State v. Boyd (May 29, 1992), Cuyahoga App. No. 60639, citing State v. Gillard (1998),40 Ohio St.3d 226, 533 N.E.2d 272, paragraph two of the syllabus; see, also, State v.King (Nov. 14, 1996), Cuyahoga App. No. 68726.
 {¶ 130} Here, appellant testified that he was at the Wings tavern during the time of the murder. Appellant offered no other evidence other than his own alleged alibi. Furthermore, he did not file a notice of alibi prior to the trial of the matter. Therefore, the state questioned appellant whether he asked McGee to *Page 36 
falsely testify at trial that she was with him at the Wings Tavern at the time of the murder. Appellant denied seeking false testimony. As a result, the prosecutor presented Sharray McGee as a rebuttal witness. She contradicted appellant and stated that he attempted to illicit her false testimony regarding his alibi. Accordingly, the state had a good faith basis to cross examine appellant regarding the fabrication of his alibi because of these contradictions.
 {¶ 131} Also within this assignment of error, appellant maintains the trial court erred in allowing the rebuttal testimony of Sharray McGee. In State v. McNeil, 83 Ohio St.3d 438, 446, 1998-Ohio-293,700 N.E.2d 596, the Supreme Court of Ohio stated:
 {¶ 132} "Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence. It is within the trial court's discretion to determine what evidence is admissible as proper rebuttal."
 {¶ 133} As previously stated, appellant testified that he was at the Wings tavern at the time of the murder. Furthermore, he denied asking McGee to falsely testify that she was with him at the time of the murder. Accordingly, the state presented the testimony of McGee because it clearly supported an inference that appellant fabricated his alibi as well as rebutted appellant's denial of soliciting McGee to testify as to a false alibi. Accordingly, the trial court did not abuse its *Page 37 
decision in allowing the rebuttal testimony of McGee. Appellant's eighth assignment of error is without merit.
 {¶ 134} Appellant's ninth assignment of error states:
 {¶ 135} "The defendant-appellant was denied Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court overruled his Motion for Mistrial."
 {¶ 136} Trial courts enjoy broad discretion in ruling on motions for mistrial. State v. Iacona, 93 Ohio St.3d 83, 100, 2001-Ohio-1292,752 N.E.2d 937; State v. Sage (1987), 31 Ohio St.3d 173, 182,510 N.E.2d 343. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding a motion for a mistrial. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g., State v. Moreland (1990),50 Ohio St.3d 58, 61, 552 N.E.2d 894; State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144.
 {¶ 137} In examining whether a mistrial is appropriate, a court should use a balancing test under "which the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." Id.; see, also,United States v. Scott (1978), 437 U.S. 82, 98 S.Ct. 2187,57 L.Ed.2d 65. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127, *Page 38 580 N.E.2d 1, citing Illinois v. Somerville (1973), 410 U.S. 458,462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425.
 {¶ 138} Here, appellant contends that the trial court erred in not granting appellant's motion for mistrial based upon the admission of evidence regarding the hostile tumultuous marriage between appellant and the victim. In the third assignment of error we concluded this evidence was admissible to prove motive, intent and lack of accident. In light of our decision in this regard, we find that the trial court did not abuse its discretion in denying appellant's motion for mistrial. Appellant's ninth assignment of error is without merit.
 {¶ 139} Appellant's tenth assignment of error states:
 {¶ 140} "The defendant-appellant was denied Due Process of Law under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court instructed the jury regarding the rebuttal witness Sharray McGee."
 {¶ 141} Here, the trial court instructed the jury regarding McGee's testimony as follows:
 {¶ 142} "The testimony of Sharray McGee is known in the law as rebuttal testimony. Such testimony may not be considered by you as proof of any of the essential elements of the charge of aggravated murder or murder. It may only be used by you on the issue of the credibility of witness — of witnesses as to whether the Defendant was at another location at the time of the homicide. Ms. McGee is *Page 39 
subject to the same credibility consideration as all other witnesses."
 {¶ 143} Appellant argues that this instruction relieved the state's burden in proving all the essential elements of the crime as well as the identity of the perpetrator of the crime. In asserting this proposition, appellant first argues that the instruction allowed the jury to infer that if they believed McGee's testimony, they could assume appellant committed the crime. The trial court clearly instructed the jury that McGee's testimony, "may not be considered by you as proof of any of the essential elements of the charge of aggravated murder or murder." Accordingly, this argument is without merit.
 {¶ 144} Appellant also argues that the instruction permitted the jury to conclude that if they believed McGee's testimony, they were to conclude appellant was at the location of the murder at the time of the crime. In asserting this proposition, appellant clearly ignores the instruction regarding alibis that immediately proceeds the court's instruction regarding McGee's testimony. There, the court instructed the jury as follows:
 {¶ 145} "If the evidence fails to establish that the Defendant was elsewhere, such failure does not create an inference that the Defendant was present at the time when, and at the place where, the offense may have been committed. If, after consideration of the evidence of alibi, along with all the evidence, you are not convinced beyond a reasonable doubt that the Defendant was present at the time in question, you must return a verdict of not guilty." *Page 40 
 {¶ 146} Therefore, we find appellant's argument without merit. His tenth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., CONCURS SEAN C. GALLAGHER, P.J., CONCURS IN PART AND CONCURS IN JUDGMENT ONLY IN PART (SEE ATTACHED OPINION)
[1] The relevant testimony at this hearing is later discussed herein.