OPINION
{¶ 1} Defendant-appellant, Kevin Miles, appeals his convictions in the Butler County Court of Common Pleas for child endangering and murder while committing a crime of violence. We affirm the convictions.
 {¶ 2} Appellant was dating Tiana Centers and he often stayed overnight at her residence. Tiana's two children, three-year-old Courtney and 18-month-old Emily, lived with her. Tiana is also allegedly pregnant with appellant's child.
 {¶ 3} On January 1, 2002, Tiana left her residence with her friend, Jennifer Atkins, to go shopping. Tiana left the children with appellant. When Tiana returned approximately a half-hour later, she noticed that Courtney was pale and lethargic. Tiana called Atkins to come over and look at Courtney. Atkins arrived at the residence within minutes and, after examining Courtney, noticed the child had substantial bruising on her body. Atkins testified that Courtney felt "limp" and "lifeless" when she picked her up. Atkins called 9-1-1. Within minutes of the call, the police and emergency medical technicians arrived. Courtney was rushed to the hospital and pronounced dead approximately one hour later.
 {¶ 4} That same day, appellant left the hospital and went to his parents' home in Woodlawn. Officer Chris Pitsch of the Woodlawn Police Department in Hamilton County was contacted by the Middletown Police Department and asked to locate appellant for questioning. Officer Pitsch went to appellant's parents' residence, identified himself as an officer, and asked to speak with them. Officer Pitsch then asked to speak with appellant. His parents looked for appellant, then informed the officer that they "couldn't find him." Officer Pitsch asked if he could look around the residence for appellant. He was given permission to look and Officer Pitsch found appellant hiding under a comforter in the utility room of the residence.
 {¶ 5} Appellant was taken to the Middletown police station for questioning. During the interview, appellant admitted that he "accidentally lost his temper," and "whacked [Courtney] last night." Appellant stated that he struck Courtney "in the abdomen" hard enough to "knock the wind out of her." Appellant was then charged with child endangerment.
 {¶ 6} Dr. James Swinehart, a forensic pathologist in Butler County, testified that on January 2, 2002, he performed an autopsy on Courtney. He noted that the external examination revealed a lice infestation of the scalp and "numerous" contusions of the skin. The contusions were "clustered within the anterior abdominal wall between the xyphoid process and umbilicus." Approximately "forty-three (43) small circular contusions were identified within the anteriolateral aspect of the body and approximately twenty-two (22) are identified within the posterior back."
 {¶ 7} Furthermore, Dr. Swinehart testified that the internal autopsy revealed that "the left lobe of the liver contained a vertically oriented laceration which measured two inches in length and up to one inch in depth." In his opinion, the liver laceration was caused by a "fairly severe impact" of "blunt force to the anterior abdominal wall" which resulted in "hemoperitoneum." In this case, Dr. Swinehart found "625cc of blood in her peritoneal cavity, or belly cavity," as a result of internal bleeding. In Dr. Swinehart's opinion, Courtney "died of an internal hemorrhage from the lacerated liver." He testified that, she "lost enough blood volume to, I believe, cause her to become cerebrally hypoxic" and the lack of oxygen to her brain caused her to become unconscious.
 {¶ 8} On January 2, 2002, appellant asked officers for a second interview. In that interview, appellant admitted that he struck Courtney hard enough to knock her down, then he picked her up and struck her again. Appellant was also charged with felony murder.
 {¶ 9} Counsel for appellant filed two motions to suppress evidence. The hearings were held on March 7 and May 1, 2002. The motions moved to suppress appellant's arrest and his videotaped statements to police. The trial court denied both motions. The matter went to trial on May 6, 7, and 8, 2002, and a jury found appellant guilty of child endangering and felony murder. Appellant appeals his convictions raising two assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "The trial court erred in denying appellant's motion to suppress his arrest and the statement obtained subsequent to that arrest when the state failed to produce any evidence supporting the proposition that the state had probable cause to arrest the appellant at the motion to suppress."
 {¶ 12} Appellant argues that at the motion to suppress hearing, the "State presented no evidence of probable cause to arrest." Appellant maintains that the trial court "improperly found that the State had met its burden" to show probable cause to arrest. Appellant argues, "consequently, the State was relieved of its burden and the Appellant was denied his most fundamental due process rights." Therefore, appellant contends that "the taped statements of Appellant were obtained after his illegal arrest, * * *, and should have been suppressed."
 {¶ 13} When considering a motion to suppress, a trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Mills (1992),62 Ohio St.3d 357, 366. Accordingly, a reviewing court must defer to the trial court's findings of fact and conclusions of law if competent and credible evidence exists to support the trial court's findings. See Statev. Smith, 80 Ohio St.3d 89, 105, 1997-Ohio-355. Furthermore, the state's burden of proof on a motion to suppress evidence is by a preponderance of the evidence. See Athens v. Wolf (1974), 38 Ohio St.2d 237. The ultimate question pertinent to this issue is whether the evidence at the hearing established that, based on the totality of the circumstances, a reasonable person in the detective's circumstances would have believed that appellant had probably committed a crime. Illinois v. Gates (1983),462 U.S. 213, 103 S.Ct. 2317.
 {¶ 14} The evidence presented at the motion to suppress hearings demonstrated that on January 1, 2002 Detective Frederick Shumake, of the Middletown Police Department, was investigating Courtney's death. Detective Shumake had information that appellant was in the residence at the time police and the emergency medical technicians arrived, and Detective Shumake wanted to question appellant.
 {¶ 15} However, appellant left Middletown and went to his parents' home in Woodlawn. The Middletown Police Department asked the Woodlawn Police Department in Hamilton County to locate appellant for questioning. Appellant was found at his parents' home and transported to the Middletown police station for questioning in connection with the death of Courtney.
 {¶ 16} On January 1, 2002, Detective Frederick Shumake and Detective Janice Brown held an investigative interview with appellant which they videotaped. The taped interview was entered into evidence at the motion to suppress hearing. The taped interview demonstrated that, prior to the interview, appellant stated that he had completed the eleventh grade, he could read and write, and he held a job. Appellant was then read his Miranda rights, appellant signed the rights card, stated he understood his rights, and stated that he wanted to speak to the detectives without an attorney present.
 {¶ 17} Appellant then denied harming Courtney in any way. He stated that she was sick, she had vomited, and he then gave her a bath to clean her, and he then put her in bed to rest. Subsequently, she had trouble breathing and 9-1-1 was called. When detectives asked appellant if he noticed any bruising on Courtney while he was bathing her, he denied seeing any bruises.
 {¶ 18} The detectives then informed appellant they knew that there was "significant bruising on Courtney" and appellant was not being honest. Furthermore, the detectives informed appellant that they knew he was left alone with Courtney for a period of time on the day she died.
 {¶ 19} Appellant then admitted that he "accidentally lost [his] temper, it got out of hand" Appellant stated, "I whacked her last night." Appellant stated that he struck Courtney "in the abdomen" hard enough to "knock the wind out of her." Appellant also admitted to striking Courtney in the back and in the abdomen on other occasions. When Detective Shumake asked appellant, did you strike her "hard enough to cause internal injuries?" Appellant answered, "maybe so, that's correct." Appellant was then charged with child endangering.
 {¶ 20} The trial court found that "the police had ample probable cause to arrest Mr. Miles, having — him having been identified as the only person that was with that child during a time when these injuries occurred." In addition, the police "already knew that this child was covered with recent, fresh, acutely inflicted bruises at the time they sought him out. He was taken into custody and at that time was going to be charged with child endangering. He was Mirandized by the Middletown Police Department. He was read the Miranda card, acknowledged his understanding, was not under the influence of alcohol or drugs at the time."
 {¶ 21} Competent and credible evidence exists to support the trial court's finding that "the police had ample probable cause to arrest" appellant. Therefore, we defer to the trial court's findings of fact and conclusions of law. See Smith, 80 Ohio St.3d at 105. Consequently, the first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "The trial court erred in admitting evidence of defendant's prior arrest, and such evidence was plain error which could not be cured by an instruction to the jury."
 {¶ 24} Appellant contends the trial court erred by admitting evidence of his prior arrests. During trial, Officer Pitsch testified that he entered appellant's name in the Regional Crime Information Center database after Middletown dispatch requested that he locate appellant for questioning. Officer Pitsch testified that, "I retrieved his information and also picked up — pulled up a mug shot from — it's just a picture that — if you have a prior arrest they take a picture and I'm able — to pull it up." Appellant's trial counsel objected to the testimony regarding the mug shot and evidence of the prior arrests. Appellant's trial counsel also asked for a mistrial based on "evidence of a prior record." The trial court denied the motion for mistrial.
 {¶ 25} The Supreme Court has held that an error in the admission of "other act" testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction. Chapman v.California (1967), 386 U.S. 18, 87 S.Ct. 824. In this case, appellant admitted to having a prior record in both of his videotaped interviews with the Middletown police. During his first interview, appellant stated, "I don't have anything violent on my record." In his second interview, appellant stated, "if you look at my criminal record, it's probably three pages long. Mainly traffic stuff, petty stuff, trouble that I got into." The interview tapes were introduced into evidence, and the jury viewed the tapes and heard appellant admit that he had a criminal record "three pages long," before Officer Pitsch gave his testimony.
 {¶ 26} Consequently, Officer Pitsch's reference to a "mug shot from a prior arrest" is harmless in light of appellant's admissions regarding his criminal record and did not contribute to the accused's conviction. Therefore, the second assignment of error is overruled.
 {¶ 27} Judgment affirmed.
Valen, P.J., and Young, J., concur.