JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} The State of Ohio appeals from a common pleas court order granting defendant-appellee Tamika Bohanon's motion to suppress. We find no error and affirm the common pleas court's decision.
 {¶ 2} Appellee was indicted for one count of theft on June 1, 2006. She was found incompetent to stand trial, but was later restored to competency. She filed a motion to suppress oral and written statements, upon which the court held a hearing on February 5, 2007. After the hearing, the court granted the motion to suppress. The state then filed the instant appeal, and the common pleas court stayed further proceedings.
 {¶ 3} At the hearing on the motion to suppress, the court heard the testimony of Detective Donald Ivory of the Cleveland Clinic Police Department. Detective Ivory testified that he was assigned to conduct a follow-up investigation concerning a theft which occurred near the Cleveland Clinic Emergency Room on March 13, 2006. He first reviewed surveillance video with his partner, Detective Bennie. The video showed that the victim, Bobbette Henderson, left her purse in a vending area in the presence of family members for 15 to 20 minutes. After the last two family members — appellee and the victim's sister, Alicia Henderson — left the vending area, appellee returned alone and then immediately entered the restroom. She stayed there for approximately 40 seconds then walked out again. The victim's purse was recovered from a trash receptacle in the restroom. Cash totaling some $632 was missing from *Page 4 
the purse.
 {¶ 4} After reviewing the surveillance video, Detective Ivory interviewed the victim, her sister, and her sister's boyfriend. He gave each of them his card, and asked them to have appellee call him. Appellee did call and arranged to meet Detective Ivory on April 10, 2006 at 2:00 p.m. to talk "about the incident that happened at the emergency when you were up here with your aunt."
 {¶ 5} Detective Ivory and his partner interviewed appellee in an office at the Cleveland Clinic. The two detectives were dressed in suits and ties. The office was equipped with a desk, a computer, three chairs and filing cabinets. The door was left open during the interview. The detectives informed appellee that she was free to leave and was not under arrest, and offered her something to drink, which she declined.
 {¶ 6} The appellee said she understood she was there because "some money came up missing from my auntie." She denied having anything to do with it. The detective then told her that "we have you on video. Either we can try to work this out, or you can try to pay the restitution back to your aunt. We can get rid of this, try to settle the matter right now." Appellee began to cry. Detective Ivory asked her why she needed the money, and she told him she needed an abortion. She also told him she was on probation, and worked at a nursing home. He asked appellee "why don't you just write a letter of apology to your aunt. Maybe she will understand. You can sit down and you can talk with her." Appellee then wrote a *Page 5 
letter to her aunt. The state introduced as evidence a copy the letter signed by appellee, which states:
 Dear Bootiey [sic]
 I'm so sorry that I told you I didn't take your money but I did and it will never happen again I love you more than life itself but I just was on some bullsh-[sic] and not thing [sic] about what would happen to me I'm crying because I hurt you a lot and I could of [sic] just ask [sic] you would [sic] give it to me my mind was not working at that [illegible].
 /s/ Sign Tamika Bohanon
After appellee finished the letter, Detective Ivory told her that he was "going to have to talk to your probation officer, and let them know of the situation, and I will be filing the charges in the Grand Jury." Appellee responded that she understood and "I'll talk to my aunt; maybe we can work this out."
 {¶ 7} The court noted that at the time appellee's competency was evaluated in August 2006, appellee was found to be mildly mentally retarded, with a documented IQ testing of 66. She also suffered from a psychotic disorder and was taking two anti-psychotic drugs. She was unable to understand the nature and objective of the legal proceedings and to assist her attorney at that time. The report establishing her restoration to competency diagnosed appellee as suffering from bipolar disorder and borderline intellectual functioning.
 {¶ 8} At the conclusion of the hearing, the court determined that appellee's admission and written apology were not voluntary, and therefore would be excluded.
 {¶ 9} The trial court's conclusion that appellee's confession was not voluntary *Page 6 
was a legal determination which we review de novo. Arizona v.Fulminate (1991), 499 U.S. 279, 287. "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976),49 Ohio St.2d 31, paragraph 2 of the syllabus.
 {¶ 10} A defendant's mental condition is a significant factor in determining the voluntariness of a confession, but it "does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional `voluntariness.'" State v. Lynch,98 Ohio St.3d 514, 2003-Ohio-2284, ¶ 55 (quoting Colorado v. Connelly (1986),479 U.S. 157, 164). Thus, while appellee's low intelligence and psychosis are important factors in our analysis, we consider them in relation to evidence of official inducement in determining whether appellee's confession was voluntary.
 {¶ 11} In this case, we find subtle inducement inherent in the detective's suggestion that they "could get rid of this, settle the matter right now," and that appellee should write her aunt a letter of apology and sit down and talk to her. Perhaps an Oxford don would have recognized the legal implications that an apology would have, but someone of appellee's limited intelligence and psychological condition would not. *Page 7 
 {¶ 12} Some twenty years ago, one of our fellow courts of appeals determined that asking the subject of an interrogation to write a letter of apology was "suspect":
 Such a procedure, in lieu of asking for a formal confession, is hardly consistent with modern police practice and certainly suggests a lack of forthrightness on the part of the officer. While we hold that under the totality of the particular facts and circumstances of this case the record supports the trial court's finding that the confessions were voluntary, we do not give judicial imprimatur to this procedure. Under other facts and circumstances, it could well be the factor that tips the balance in favor of an accused.
State v. MacDonald (Jan. 13, 1988), Hamilton App. No. C-860833. We find the inducement inherent in the officer's suggestion that appellee write her aunt a letter of apology, combined with appellee's limited intelligence and psychological conditions, rendered her confession in this case involuntary. Accordingly, we affirm and remand for further proceedings consistent with this opinion.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 PATRICIA ANN BLACKMON, J., CONCURS. *Page 8 
COLLEEN CONWAY COONEY, P.J., CONCURS IN PART, DISSENTS IN PART (SEE ATTACHED CONCURRING IN PART, DISSENTING IN PART OPINION)