The STATE of Ohio, Plaintiff,

v.

DANIEL, Defendant.

2008-Ohio-2050.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2007 CR 0580.

Decided April 4, 2008.

10

Donald White, Clermont County Prosecuting Attorney, and Scott Smith, Assistant Prosecuting Attorney, for plaintiff.

George E. Pattison, for defendant.

HADDAD, Judge.

{¶ 1} This matter came before the court on February 11, 2008, pursuant to a motion to suppress and a motion in limine filed by the defendant. Upon hearing oral arguments on the motions, the court took the matter under advisement and now renders the following decision.

**12**

{¶ 2} The defendant, Phillip R. Daniel, was indicted on July 18, 2007, on one count of sexual battery. It is alleged that on or about July 3, 2007, in Batavia, Ohio, the defendant engaged in sexual conduct with another, not the spouse of the defendant, when the defendant knew that the other person submitted because the other person was unaware that the act was being committed. Specifically, the defendant is accused of inserting his finger into the vagina of the alleged victim, L.C., who was asleep at the time.

{¶ 3} The defendant filed a motion to suppress and a motion in limine on January 17, 2008. In his motion, the defendant argues that the court should exclude and/or suppress all evidence obtained as a result of his arrest, including his statements to the police. In support of his motion, the defendant argues that he was not given his *Miranda* warnings prior to information being obtained by the investigating officer; therefore, the defendant asserts that all questions answered by him while he was in custody were involuntary. Further, the defendant contends that the statement given to Investigator Pavia should be suppressed because the investigator made untruthful statements on several occasions as to the events that took place. He also asserts that the investigator made misleading statements about the reason for the interview and probable outcome of the matter, resulting in involuntary statements by the defendant. Finally, the defendant argues that his recorded statement contains untrue statements made by the police officer that the jury should not be permitted to hear and contains questions about punishment and other related statements that are prejudicial to the defendant under Evid.R. 403.

{¶ 4} A hearing was held on the motions on February 11, 2008. The uncontroverted evidence from that hearing shows that Officer Perkins and Sergeant Brown of the Union Township Police Department, after having spoken to the alleged victim and her boyfriend, appeared at the defendant's residence on July 3, 2007. Officer Perkins testified that he knocked on the defendant's front door, but the defendant did not answer. He then proceeded to the sliding door and knocked again. The defendant answered and permitted the officers to enter the residence. Officer Perkins testified that the defendant had been drinking, but appeared only to be fatigued. There was no evidence presented to indicate that the defendant was intoxicated at the time of this initial encounter. Officer Perkins testified that he and Sergeant Brown did not draw their weapons and that the defendant was not handcuffed at this time. Upon entering the residence, the officers spoke to the defendant about the alleged incident. Officer Perkins testified that the defendant was sitting on his couch during the questioning and was permitted to freely move about the room. The defendant was asked about the evening of July 3, 2007. The defendant asked the officers whether there had

been a complaint filed, to which Officer Perkins explained that L.C. had filed a complaint alleging that the defendant had touched her inappropriately. The defendant responded that he was never in the room, but then proceeded to give an explanation about letting his friend's dog into the bedroom where the alleged victim and her boyfriend were asleep. He explained that he tripped and that any touching of the alleged victim was accidental.

{¶ 5} Officer Perkins testified that he and Sergeant Brown then went to their police car to obtain a written statement form. Officer Perkins then went back into the defendant's home to obtain a written statement. Sergeant Brown was not present when the defendant gave his written statement. The defendant indicated in his written statement that he had been in the alleged victim's bedroom. Officer Perkins testified that he wrote the questions asked during his conversation with the defendant on the written forms and asked the defendant to write an answer to the questions. After obtaining the defendant's written statement, Officer Perkins left the defendant's residence without placing the defendant under arrest. Officer Perkins testified that this initial encounter with the defendant lasted approximately 30 to 45 minutes.

{¶ 6} Detective John Pavia of the Union Township Police Department testified at the hearing that he received the report taken by Officer Perkins and contacted the defendant to set up an interview. The defendant appeared on his own volition at the Union Township Police Department on July 5, 2007, for this interview. After Detective Pavia and the defendant were introduced, Detective Pavia placed the defendant in an interview room. Detective Pavia testified that the defendant was not handcuffed and was not deprived of food, water, the ability to use the restroom, or any other essentials. The defendant's keys were lying on the table at all times, within the defendant's reach. The defendant was told at the beginning of the interview that he was not under arrest, would not be arrested that day, and was free to leave whenever he wished. The defendant then responded to a series of questions by the detective regarding the alleged incident. The video shows that the defendant changed his explanation regarding the events of the night in question several times during the course of the interview. Detective Pavia testified that the interview lasted approximately 30 to 40 minutes, and the defendant was permitted to leave when the interview concluded. After the interview, the defendant was told by Detective Pavia that the interview would be turned over to the prosecutor's office to determine whether he would be indicted. The defendant asked the detective whether he needed an attorney, to which the detective responded that he could not give legal advice. The defendant indicated that he understood and proceeded to leave. Detective Pavia testified that there were no conversations with the defendant regarding the alleged incident after they left the interview room.

## LEGAL ANALYSIS

### Motion to Suppress Officer Perkins's Interview
### July 3, 2007

{¶ 7} The defendant's first argument at the hearing was that the oral and written statements provided to Officer Perkins by the defendant on the night of July 3, 2007, should be excluded because those statements were not voluntarily made. The defendant argued in his written motion that information was obtained from the defendant without the officer's giving the defendant his *Miranda* warnings; therefore, all questions answered by the defendant were answered involuntarily.

{¶ 8} The United States Supreme Court case of *Miranda v. Arizona* provides, "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. The police are not required to give *Miranda* warnings to everyone that they question, but instead must issue those warnings only when the subject is subjected to "custodial interrogation." *State v. Kessler*, Fayette App. No. CA2005–12–037, 2007-Ohio-1225, 2007 WL 805612, ¶ 11, citing *Miranda* and *State v. Biros* (1997), 78 Ohio St.3d 426, 440, 678 N.E.2d 891. "The test used to judge whether an individual is in custody for purposes of *Miranda* and, thus, entitled to *Miranda* warnings, is whether, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave." *In re Sherrin* (May 26, 1998), Franklin App. No. 97APF10–1378, 1998 WL 270192, at *3, citing *State v. Gumm* (1995), 73 Ohio St.3d 413, 653 N.E.2d 253. Neither an officer's subjective intent nor the defendant's subjective beliefs are relevant to this analysis. *State v. Estepp* (Nov. 26, 1997), Montgomery App. No. 16279, 1997 WL 736501, at *4. In *Estepp*, the court suggested that the following factors should be considered when determining whether an individual is in custody: (1) the location of the questioning—i.e., was the defendant comfortable and in a place a person would normally feel free to leave, (2) whether the defendant was a suspect when the interview began, (3) whether the defendant's freedom to leave was restricted in any way, (4) whether the defendant was handcuffed or told he was under arrest, (5) whether threats were made during the interrogation, (6) whether the defendant was physically intimidated during the interrogation, (7) whether the police verbally dominated the interrogation, (8) the defendant's purpose for being at the place where the

questioning took place, (9) whether neutral parties were present during the questioning, and (10) whether the police took any action to overpower, trick, or coerce the defendant into making a statement. Id. at *4.

{¶ 9} Ohio courts have held that an individual is not considered to be in custody simply because he is the focus of an investigation when questioned. *State v. Way* (Dec. 2, 1992), Medina App. No. 2106, 1992 WL 368941, at *2. Further, the courts have generally held that an individual is not in custody when questioning takes place in the home and the individual is free to move about as he sees fit without the officers' displaying weapons or force. *State v. Walker* (1993), 90 Ohio App.3d 352, 360, 629 N.E.2d 471; *State v. Hopfer* (1996), 112 Ohio App.3d 521, 546, 679 N.E.2d 321; *Way,* supra; *State v. Walker* (Sept. 16, 1997), Franklin App. No. 97APA02–212, 1997 WL 578946, at *3; *In re Sherrin* (May 26, 1998), Franklin App. No. 97APF–10–1378, 1998 WL 270192, at *3. The courts have also held that an individual is not in custody just because he does not have the freedom to drive away from a traffic stop. *State v. Lafferty* (Nov. 7, 1988), Clermont App. No. CA88–05–035, 1988 WL 120787, at *1; *State v. Green* (Aug. 8, 1994), Butler App. No. CA94–01–010, 1994 WL 409625, at *3. It is also true that placing a suspect in a cruiser for a brief period of time does not necessarily elevate a traffic stop to a level of formal arrest. *State v. Johnson* (May 1, 2000), Clermont App. No. CA99–06–061, 2000 WL 525671, at *4.

{¶ 10} Further, the court notes, "*Miranda* was not intended to hamper the ability of law enforcement officers to legitimately investigate crimes." *State v. Johnson* (May 1, 2000), Clermont App. No. CA99–06–061, 2000 WL 525671, at *3. "The Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws. 'Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished.'" *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497, quoting *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854.

{¶ 11} The state's burden of proof at a suppression hearing is by a preponderance of the evidence. *State v. Miles,* Butler App. No. CA2002–06–149, 2003-Ohio-7209, 2003 WL 23095408, ¶ 13. Therefore, the burden is on the state to prove by a preponderance of the evidence that the defendant was given his *Miranda* warnings. See *State v. Benson,* Cuyahoga App. No. 87655, 2007-Ohio-830, 2007 WL 613994, ¶ 65; *State v. Ready* (2001), 143 Ohio App.3d 748, 757, 758 N.E.2d 1203. Preponderance of the evidence simply means the "greater weight of evidence." *State v. Stumpf* (1987), 32 Ohio St.3d 95, 102, 512 N.E.2d 598, quoting *Travelers' Ins. Co. v. Gath* (1928), 118 Ohio St. 257, 261, 160 N.E. 710.

■ {¶ 12} The court notes that despite his argument in his written motion, the defendant stipulated at the hearing on February 11, 2008, that no custodial interrogation occurred; therefore, the court need not determine whether the defendant was in custody at the time Officer Perkins obtained his oral and written statements. Because the defendant admits that he was not in custody at the time Officer Perkins obtained his statements, the court concludes that the officers were not required to issue *Miranda* warnings to the defendant. However, the defendant seemed to argue at the hearing that although *Miranda* warnings were not required, the defendant's statements to Officer Perkins were given involuntarily.

{¶ 13} "Evidence of 'police coercion or overreaching is necessary for a finding of involuntariness.'" *State v. Fulton,* Clermont App. No. CA2002–10–085, 2003-Ohio-5432, 2003 WL 22326575, ¶ 28, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 163–164, 107 S.Ct. 515, 93 L.Ed.2d 473, and *State v. Hill* (1992), 64 Ohio St.3d 313, 318, 595 N.E.2d 884. When determining whether a statement was made involuntarily, the court must employ a "totality of the circumstances" test. Id., quoting *State v. Bays* (1999), 87 Ohio St.3d 15, 22, 716 N.E.2d 1126, and *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844. Under this test, the court should consider the following: (1) the age, mentality, and prior criminal experience of the individual making the statement, (2) the length, intensity, and frequency of the questioning, (3) whether the individual was physically deprived or mistreated, and (4) whether the individual was threatened or induced. Id., citing *State v. Lynch,* 98 Ohio St.3d 514, 522, 2003-Ohio-2284, 787 N.E.2d 1185. See also *State v. Bohanon,* Cuyahoga App. No. 89443, 2008-Ohio-1087, 2008 WL 660536, ¶ 9, quoting *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus. "[T]he state carries the burden of proving the voluntariness of a confession by a preponderance of the evidence." *Hill,* 64 Ohio St.3d at 318, 595 N.E.2d 884.

■ {¶ 14} The court finds that given the totality of the circumstances, the defendant's oral and written statements to Officer Perkins were made voluntarily. The defendant was 32 years old at the time the alleged incident occurred and was employed as a car salesman. He appeared to be of normal intelligence and fully capable of understanding. Officer Perkins testified that the defendant had been drinking on the night in question; however, there was no evidence presented to the court that the defendant was intoxicated and incapable of understanding the implications of speaking with the officers. Further, Officer Perkins testified that the initial questioning of the defendant lasted only 30 to 45 minutes, during which time the defendant changed his narrative several times. The evidence seems to indicate that the questioning was more relaxed and casual, with the defendant in his home and sitting on his own sofa. Officer Perkins also testified that the defendant had asked him at one point whether a complaint had been filed against

him, which indicates that the conversation was not police dominated. The evidence also indicates that the defendant was not physically deprived or mistreated, as he was in his own home and was free to move about as he pleased. The officers did not brandish their weapons, nor did they handcuff the defendant. Finally, there is no evidence in the record to indicate the existence of threat or inducement. Officer Perkins testified that he arrived at the defendant's home, was permitted to enter the residence by the defendant, and did not brandish weapons or handcuff the defendant. There was no evidence that any threats or promises were made to the defendant in order to induce him to make these statements. Based upon the totality of the circumstances, the court finds that there is no evidence of police overreaching or coercion; therefore, the defendant's oral and written statements on the night of July 3, 2007, were voluntary, and the defendant's motion to suppress those statements is denied.

### *Motion to Suppress Detective Pavia's Interview*
### *July 5, 2007*

{¶ 15} The defendant next argues that the taped interview, which occurred on July 5, 2007, should be suppressed because the defendant's statements during the interview were made involuntarily. The defendant argued that Detective Pavia had made untruthful statements to the defendant as to the events that took place and had made misleading statements to the defendant as to the reason for the interview and probable outcome of the matter.

{¶ 16} The fact that an interrogating officer lies to a defendant during questioning does not necessarily make his statements involuntary, but is merely a factor bearing on voluntariness. See *State v. Carovillano*, Hamilton App. Nos. C–060658 and C–060659, 2007-Ohio-5459, 2007 WL 2965340, ¶ 25; *State v. Winterbotham*, Greene App. No. 05CA100, 2006-Ohio-3989, 2006 WL 2219467, ¶ 32; *State v. Hatcher* (Feb. 17, 2000), Franklin App. No. 99AP–460, 2000 WL 190496, at *3, citing *State v. Cooey* (1989), 46 Ohio St.3d 20, 27, 544 N.E.2d 895; *State v. Briggs* (Mar. 8, 1999), Butler App. No. CA98–06–127, 1999 WL 125365, at *5; *Schmidt v. Hewitt* (C.A.3, 1978), 573 F.2d 794, 801; *Frazier v. Cupp* (1969), 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684. The statements are admissible when all other factors of voluntariness weigh in favor of a finding that the statement was made voluntarily, even if the police lied to the accused during the questioning. See *State v. Wiles* (1991), 59 Ohio St.3d 71, 81, 571 N.E.2d 97; *State v. Ward* (July 31, 1996), Lorain App. No. 95CA006214, 1996 WL 425904, at *3.

{¶ 17} The court notes that one specific statement by Detective Pavia that the defendant contends was deceitful occurred at approximately 7:52:10. The defendant was told that he was not going to jail, no matter what he told the detective. The court finds that this statement was not deceitful or misleading

because the defendant did not go to jail that day, even though he had made some incriminating statements to the detective. When the interview ended, the defendant left in his own vehicle. The court might have reached a different conclusion had the detective told the defendant that he would never go to jail, no matter what he told the detective, but no such statement was ever made. Instead, the context of the video indicates that the detective's statement was for the sole purpose of informing the defendant that he was not under arrest at that time and would not be placed under arrest when the interview ended.

{¶ 18} With that being said, the court must still determine whether the defendant's statements made during the interview were involuntary. This determination must be made under the factors previously set forth for voluntariness. The court finds that the defendant was 32 years old when this interview occurred and was of normal intelligence. The interview lasted only 30 to 40 minutes and was not police dominated. The defendant was given an opportunity to respond to every question or hypothetical presented by the detective. Further, the tone of the interview was calm and relaxed. The defendant was never physically deprived of anything or mistreated. The court notes that the defendant did not ask the detective for any essentials, such as food or water. It was evident from the video that the defendant was free to leave at any time and was not obligated to answer any of the questions. His car keys were within his reach at all times, he arrived at the interview upon his own volition, and when the interview concluded, he left in his own vehicle. Further, there has been no evidence presented that the defendant was threatened or induced. The defendant might argue that the statement at the beginning of the interview regarding whether the defendant would be arrested was a promise that induced him to respond to the detective's questions. However, the court finds that this statement was not a promise to the defendant that he would never be arrested, but was instead a statement by the detective that the defendant was not under arrest and would not be arrested immediately upon the conclusion of the interview.

{¶ 19} Based upon the totality of the circumstances, the court finds that there is no evidence of police overreaching or coercion during the interview on July 5, 2007, even assuming that the detective was dishonest as to some of his statements to the defendant during the interview. Therefore, the defendant's statements during his July 5, 2007 interview were voluntary, and the defendant's motion to suppress those statements is denied.

*Motion in Limine*
*July 5, 2007 Interview*

{¶ 20} The defendant's final argument is that the defendant's recorded statement during the taped interview contains untrue statements made by

Detective Pavia that the jury should not hear and contains questions about punishment and other related statements that are prejudicial and should not be admitted pursuant to Evid.R. 403(A), which provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 21} The court notes that while it cannot find any cases directly on point in the state of Ohio, other jurisdictions have addressed the issue of the admissibility of an officer's statements made during a police interrogation. These courts have held that an officer's comments during a police interrogation are part of an effort to elicit a response and are not to be interpreted as the officer's opinions or beliefs about the alleged incident. The interrogation techniques are aimed at showing the defendant that the officer recognizes that there are holes and contradictions in the defendant's story. The courts have further held that the officer's comments are an integral part of the interrogation, as they provide the necessary context for the defendant's responses. See *Huckeba v. State* (1995), 217 Ga.App. 472, 458 S.E.2d 131; *Lanham v. Commonwealth* (Ky.2005), 171 S.W.3d 14; *Anderson v. State* (Alaska App.1994), No. A–4467, 1994 WL 16196231, *Commonwealth v. Kitchen* (Pa.Super.1999), 730 A.2d 513, 521–522; *State v. Demery* (2001), 144 Wash.2d 753, 30 P.3d 1278; *State v. Cordova* (2002), 137 Idaho 635, 51 P.3d 449; *Dubria v. Smith* (C.A.9, 2000), 224 F.3d 995.[1]

{¶ 22} The defendant's first objection occurred at 7:52:10 of the video. The defendant argues that Detective Pavia's statement to the defendant that he would not go to jail was an untrue statement that the jury is not entitled to hear. The court has already determined that this statement by the detective was not deceitful because the defendant was permitted to leave the interview without going to jail, despite the fact that he made some incriminating statements to the detective. Instead, the detective's statements served merely to inform the defendant that he was not under arrest at that time and would not be arrested at the conclusion of the interview. The detective did not make a statement to the defendant that he would never be arrested. Therefore, based upon this analysis, the court finds that this statement by the detective was not false or misleading.

{¶ 23} The defendant next objects to a statement made by Detective Pavia at approximately 8:03:18, when the detective discusses the issue of penetration. The defendant argues that there is no factual basis for this discussion and could

---

1. The court notes that the objections of the defendant in these cases involved the alleged hearsay statements of the officers or an expression of the officer's opinion regarding the defendant, the victim, or the alleged incident. However, the court finds that the same analysis applies in this case because the officer's statements are not being offered to prove the truth of the matter asserted in them, but are instead being used as an interrogation technique to elicit a response from the defendant.

be potentially false or misleading. The court finds that the detective's statement was simply an interrogation technique used in interviewing the defendant, and his goal was to get a reaction and a confession from the defendant. The detective's comments were part of an effort to elicit a response and were not intended to sway the jury in any manner. Further, the evidence from the videotape indicates that the detective's statements regarding penetration were true because the defendant admits during the interview that his fingertip did penetrate the alleged victim's vagina. This question by the detective provides the necessary context for the defendant's responses throughout the interview regarding penetration. The court notes that the statement is not being proffered for the truth of the statement itself, but is instead being used to give context to the defendant's responses. For this reason, the court finds that the probative value of the statement outweighs any potential prejudice that the defendant might suffer.

{¶ 24} The defendant also objects to a statement made by Detective Pavia at approximately 8:04:10 of the video. In this statement, the detective asks the defendant whether someone who is accused of touching another while she is asleep deserves a second chance. The defendant argues that this is a question regarding punishment and that its prejudicial effect outweighs any probative value that it might have. Again, this statement was used for the sole purpose of obtaining a reaction from the defendant. The detective's comments were part of an effort to elicit a response and were not intended to sway the jury in any manner. Further, the question merely provides context for the response. The defendant was given an opportunity to respond, and he chose to respond in the negative. This dialogue is probative in that it allows the jury to determine whether the defendant agrees that such conduct is wrong. The jury will still be given the opportunity to decide for themselves, based upon all of the evidence before them, whether the defendant in this case deserves a second chance. It is for these reasons that the court finds that the probative value of the detective's question and the defendant's response outweighs any potential prejudice that the defendant might suffer.

{¶ 25} The defendant's next objection occurred at approximately 8:12:06, and involved a discussion wherein Detective Pavia told the defendant what he believed that the investigation had shown up to that point. The court is not sure of the basis of the objection, other than the possibility that the statement might have been false or misleading. Again, the court finds that the detective's statement was an interrogation technique used in interviewing the defendant, and his goal was to get a reaction and a confession from the defendant. The detective's comments were merely an effort to elicit a response from the defendant and were not intended to indicate to the jury what he believes happened in this case. Further, the statement is not being offered for its truth,

but is instead being used to give context to the defendant's responses. The defendant was given an opportunity to answer, and he chose to respond with an admission rather than a denial, and the question merely provides context for that response. Therefore, the court finds that the probative value outweighs any potential prejudice that the defendant might suffer.

{¶ 26} The final objection lodged by the defendant involved what occurred at approximately 8:14:04. Detective Pavia commented to the defendant that they both knew that it was impossible for the incident to have occurred in the manner that the defendant alleges. The defendant argued that this was a clear misstatement of fact because the defendant's explanation is not necessarily impossible. The court notes that during his opportunity to respond, the defendant himself adopts the detective's statement as true. The court also notes, again, that the detective's statement was made in an attempt to elicit a response and possible confession from the defendant. It was not intended to be used for the truth of its content—i.e., that the defendant could not have accidentally touched the alleged victim.

{¶ 27} It is also important for the court to note that this form of questioning is a legitimate and effective interrogation tool. Such comments are an integral part of the interrogation process, as they provide the necessary context for the defendant's responses. The court finds that such recorded statements during an interrogation are a legitimate, and even ordinary, interrogation technique, especially when the defendant's story shifts and changes. The court further finds that retaining these comments is necessary to provide a context for the answers given by the defendant.

{¶ 28} As to the videotape in general, the court intends to give the jury a limiting instruction prior to its playing of the video, in which the jurors will be told that they are not to consider the detective's statements for any purpose other than to give context to the defendant's answer; therefore, potential prejudice, if any, to the defendant from the statements made in the video will be prevented.

## CONCLUSION

{¶ 29} Based upon the foregoing analysis and the competent, credible evidence before the court, the court finds that the defendant's motion to suppress the oral and written statements obtained by Officer Perkins on July 3, 2007, is denied. Further, the defendant's motion to suppress the videotaped statement obtained by Detective Pavia on July 5, 2007, is denied. The defendant's motion in limine as to the videotaped statement obtained by Detective Pavia is also denied in its entirety.

{¶ 30} It is ordered that this decision shall serve as the judgment entry in this matter.

So ordered.